COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Millette
Argued at Alexandria, Virginia


ANONYMOUS B

v.      Record No. 1170-07-2

ANONYMOUS C AND
 ALBEMARLE COUNTY DEPARTMENT
 OF SOCIAL SERVICES
                                                    OPINION BY
ANONYMOUS C                            JUDGE LARRY G. ELDER
                                                    APRIL 29, 2008
     v.      Record No. 1198-07-2

ANONYMOUS B AND
 ALBEMARLE COUNTY DEPARTMENT
 OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                          Paul M. Peatross, Jr., Judge

           William H. Hurd (Stephen C. Piepgrass; Troutman Sanders LLP, on
           briefs), for Anonymous B.

           Steven L. Raynor (Martin & Raynor, P.C., on brief), for
           Anonymous C.

           Andrew H. Herrick (Larry W. Davis; Edward H. Childress,
           Guardian *ad litem* for the minor child; Albemarle County
           Attorney's Office; Edward H. Childress, P.C., on brief), for
           Albemarle County Department of Social Services.


        In these related appeals, Anonymous B and Anonymous C, the father and mother of a

now seven-year-old daughter, challenge the rulings of the Albemarle County Circuit Court (the

trial court) related to a protective order entered following a finding by the juvenile and domestic

relations district court (J&DR court) that the child was abused and neglected.  On appeal, father

contends that, following an administrative reversal of a founded complaint of sexual abuse, the trial court erred in refusing to dismiss the abuse and neglect petition filed against him by the Albemarle County Department of Social Services (DSS) and to vacate the related protective order entered by the J&DR court. He also avers the trial court erred in refusing to allow a trial *de novo* or even to hear evidence on the issue of whether it was father or mother who abused the child to the extent "such clarification was necessary to determine what sort of protective order was appropriate." Further, he argues that, in the absence of a determination that he abused the child in any way, the trial court's limitation of his visitation to three hours of supervised contact per week was error. Finally, father contends the trial court erred in ordering him to pay a portion of mother's attorney's fees.

Mother, in her related appeal, contends the trial court erred in construing the J&DR court's adjudicatory order, the contents of which the parties attempted to stipulate to in their appeal to the circuit court, as finding only that one of the two parents had abused and neglected the child rather than as finding that father had abused the child sexually.

We hold the trial court did not err in the way mother alleges, did not commit reversible error in refusing to admit certain evidence regarding the administrative proceeding, and did not err in refusing to dismiss the protective order based on the result of that proceeding. Nevertheless, we conclude that, despite the parties' apparent stipulation to the J&DR court's nonspecific finding of abuse, the trial court was required to hear evidence and make findings on the issue of which parent or parents committed the abuse and what type of abuse was involved in order to allow it to enter a protective order containing terms designed to meet the best interests of the child while taking into consideration the rights of her parents, as well. Thus, we vacate the trial court's order of April 18, 2007, and remand for further proceedings consistent with this

opinion.[1] On remand, the protective order shall remain in effect until those additional proceedings have been completed.

## I. BACKGROUND

Mother and father were engaged and lived together but never married. Daughter was born on December 8, 2000, and at some point thereafter, a dispute arose over custody. By order of August 10, 2004, the J&DR court awarded mother primary physical custody and granted father liberal visitation. That order also included findings that "[t]here is no evidence to support [the mother's] abuse allegations against the Father" and "no evidence that the child is experiencing any physical, mental or emotional problems at this time." The court directed that a particular therapist "conduct mental health wellness check-ups" of the child at a frequency to be determined by that therapist and that the child "shall have no mental health therapy unless it is approved by [that therapist] who can make that referral for another counselor." Finally, the order provided that "[i]f either parent believes it necessary to have a medical or psychological exam involving alleged abuse, that parent shall directly contact Albemarle County CPS before such appointment, so that Albemarle CPS can be present at such exam."

Sometime in late 2004, mother contacted Dr. Viola Vaughan-Eden, a licensed clinical social worker specializing in child sexual abuse, and asked about having the child evaluated. Mother also contacted DSS social worker Lori Green, who approved the evaluation. On December 29, 2004, Dr. Vaughan-Eden met with Green, mother, and the child. She then met with the child alone on four different occasions. During those sessions, the child reported her father had "a purple thing" called a "peanut," "that the peanut had been put in her butt," and "that

---

[1] We deny as unnecessary Anonymous B's motion for leave "to file under seal a statement identifying the individual parties and the child." The sealed record and the portions thereof reproduced in the sealed appendix make clear, without the need for further identification, which parties are referenced in the briefs as Anonymous A, B, and C.

it had really hurt." When Dr. Vaughan-Eden asked the child to identify her body parts on a drawing she had made of herself, "she identified her genitalia as being a vagina," and when Dr. Vaughan-Eden asked, "what does daddy have?" the child responded, "daddy has a peanut." The child also said "the purple thing is like a crown" or "crayon" and that "grown-ups have to help it get hard." The child said her father "had also been touching her vagina . . . with his hand" on several occasions and "had put the peanut on her forehead."

Dr. Vaughan-Eden contacted DSS's Lori Green to report the suspected abuse. After the child repeated to Ms. Green and a police detective some of her allegations that her father had sexually abused her, DSS filed a petition for a preliminary protective order pursuant to Code § 16.1-253 alleging the child had been sexually abused, and the J&DR court entered an *ex parte* preliminary protective order.

The J&DR court held an adversarial hearing on the petition on February 16, 2005, at which Dr. Vaughan-Eden testified that, based on the child's age, what the child said and how she said it, Dr. Vaughan-Eden thought it "improbable and not likely" that the child had been coached by mother to accuse father. The court ruled as follows:

> Well I think clearly the evidence shows that this child is the subject [of] abuse and neglect. . . . [A]t this point I really can't identify a perpetrator because the problem with the evidence [is that] . . . it's either clearly coming from the mother or from the father. And the problem . . . with this whole case[] is that you never can get to the bottom of the matter because there is always interference. And [mother] certainly did not violate the Court's order, . . . but she certainly did skirt it and that creates the problem because Dr. Vaughan-Eden certainly appears to be credible and she certainly has the credentials. But there is always the matter of is this tainted evidence, because there was not open disclosure and the rules were not clearly defined. . . . [S]o therefore I'm not in a position today to state who the perpetrator is. But we can't allow this situation to continue. So I do find the child has been abused and neglected . . . with the perpetrator unidentified at this particular point. I'm going to request Dr. Vaughan-Eden to continue to complete her . . . evaluation and in doing so we will make available

- 4 -

> to her all . . . reports that the Court has considered [in] the past
> . . . .

On February 18, 2005, the J&DR court entered a second preliminary protective order finding the child abused and neglected but stating that, "Due to history and the failure of the mother to comply strictly with a court order the abuser of the child is not identifiable at present." The court ordered no unsupervised contact with the father. Based on father's objection "to the [J&DR court's] entering a finding with respect to the allegation of abuse or neglect," the court scheduled an adjudication hearing with a dispositional hearing to follow.

On March 15, 2005, the J&DR court conducted the adjudicatory hearing, finding again that the child was abused and neglected based on "[t]he facts alleged in the affidavit and the testimony of Dr. Viola Vaughan-Eden," again naming both parents, and restating the requirement that all contact between father and the child would continue to be supervised. The J&DR court's contemporaneous notes, signed by the presiding judge, indicated "finding remains—no party named."

Subsequently, Dr. Vaughan-Eden completed a detailed report in which she (1) recounted the child's statements about father's sexual abuse in detail, (2) indicated the child "denied anyone other than her father hurt[] her, and denied anyone t[old] her to make these allegations, including her mother," and (3) opined that the child's statements "appeared to be spontaneous and not coerced." Dr. Vaughan-Eden also made recommendations that each parent and the child receive therapy and that father have only supervised contact with the child.

In a dispositional hearing on April 22, 2005, the J&DR court said it was "not going to be retrying this case" but considered the recommendations of Dr. Vaughan-Eden and a second expert witness. The court ordered appointment of a therapist for the child and directed that both parents "engage in counseling regarding sexually abused children." It also ordered, "For the child's protection and for the father's protection, . . . there be only supervised visitation . . . so

- 5 -

that everyone knows exactly what the contact between the father and the child would be. . . ." On April 29, 2005, the J&DR court then issued a child protective order naming both parents and incorporating most of Dr. Vaughan-Eden's recommendations, including supervised visitation for father, counseling for the child, and participation by both parents in sexual abuse counseling and support groups for parents of sexually abused children. It entered additional protective orders on November 1, 2005, and May 3, 2006, which contained similar terms, including supervised visitation for father. Father's appeal of DSS's Level 1 administrative finding that he sexually abused the child was still pending on both those occasions, and DSS asked that visitation continue to be supervised until the administrative appeal was resolved.

Father noted a *de novo* appeal to the circuit court (trial court) of the May 3, 2006 order, but DSS, mother, and father purported to "agree[] that this appeal involves the terms of the [last] dispositional Order of May 3, 2006[,] and not the adjudicatory Order of March 15, 2005." While that judicial appeal was pending, father's appeal of DSS's administrative finding that he sexually abused the child was resolved in his favor, and father moved the circuit court to dissolve the protective order. In response, mother moved the court for leave to file a cross-claim, noting that reversal in the administrative proceeding, which had involved only father and DSS, negatively impacted DSS's "ability to act effectively as a plaintiff in this civil action." In the accompanying cross-claim, mother asked that the court "construe the Adjudicatory Order of March 15, 2005, to [hold] that [father] . . . abused [the child]" either sexually or, in the alternative, in a non-specific way, and to "enter such Orders as necessary to protect her from additional abuse." The trial court denied father's motion to dissolve the protective order and accepted mother's cross-claim.

On January 22 and 23, 2007, the trial court heard father's appeal of the J&DR court's May 3, 2006 dispositional order and mother's cross-claim. DSS's attorney stated that, based on the administrative hearing officer's decision, "the original rationale for [DSS] bringing the

petition has in administrative proceedings been unfounded," and DSS "submit[ted] to the court" whether a protective order remained necessary to achieve the child's best interests. Father contended the protective order should be dismissed, but the trial court denied the motion.

The parties engaged in extensive argument over the meaning of the J&DR court's adjudicatory order, with father contending it made an unspecific finding of abuse and mother contending it constituted a finding of sexual abuse by father. Father argued both parties were entitled to put on evidence that had never been heard by the J&DR court. Mother agreed that such evidence was relevant to the extent it related to the proper disposition and did not seek to relitigate the adjudicatory order. Father attempted to introduce evidence of the reversal of the original administrative finding of abuse, as well as a letter from counsel for DSS concerning DSS's position in the case immediately prior to the circuit court hearing. Father agreed the court was not bound by the administrative decision but argued he was entitled to have it admitted into evidence and that it was something the court "can and should consider." The trial court ruled it was aware of the administrative finding as well as the fact of its reversal, as represented by DSS's attorney, and following mother's objection based on hearsay and relevance because "we're not retrying the adjudicatory order," the court refused the exhibits.

The trial court also refused the proffered testimony of expert witness Dr. Janet Warren, through whom father sought to offer evidence of whether he presently posed a risk to his daughter if allowed unsupervised visitation, ruling, "[Father] could have appealed that [adjudicatory] order and had a hearing *de novo*, and he could have presented evidence back at that time . . . . I am in disposition appeal of a protective order after an adjudication that I am not readjudicating." It also said, "[I]t's your turn to put on evidence . . . as to whether a protective order should be entered and what it should say. But I don't want to . . . readjudicate what the Court determined causing it to enter the [adjudicatory] order of March 15th."

Counsel for DSS argued, "[I]f the subject matter of [the] testimony is critical of [DSS's] investigation, we think that is inappropriate. We think that to the extent [the testimony concerns] a risk assessment . . . or recommendations about where we go from here, that would be appropriate." Counsel for father responded, "Risk assessment is based upon the investigation and [the witnesses'] experience that the investigation does not reveal that [father] did this, and, therefore, poses no risk to this child. . . . I don't know how you do a risk assessment without evaluating the evidence against someone." The trial court ruled, "[I]t's risk assessment now. It's not testimony about how the interview or matter was handled at the adjudicatory stage."

Father called Dr. Dennis Carpenter, who counseled father. The court refused to allow Dr. Carpenter to testify to anything based on his observations or treatment of father prior to November 1, 2005, the date of entry of the last dispositional order prior to the one appealed.

Following the close of evidence and the argument of counsel, the trial court ruled:

> First we start with the adjudication order of March 15th, and the Court finds that it can't change that order legally.
>
> The Court is limited by what the order says and the Court didn't have the ability today to hear additional evidence to clarify the identity of a perpetrator, whether there was sexual abuse by [father], whether there was any false accusation by [mother]. The Court is simply limited in what that order says.
>
> That order does make a finding of abuse and neglect, and it identifies parents. Not a parent.
>
> \* \* \* \* \* \* \*
>
> [T]he Court needs to make now a disposition as a result of that order of adjudication, and should a protective order be entered, [whether entry of a protective order] is in the best interest of the child.
>
> \* \* \* \* \* \* \*
>
> [T]he Court can't find either [that father abused the child or that mother fabricated the allegations. The only finding is that] . . . the child is abused or neglected, as the adjudication order stated.

- 8 -

So the question becomes, do you need a protective order. And the Court concludes that you do, because I do find that the mother believes and asserts that the father sexually abused the child. The father denies it and is certainly suggesting that the mother's evidence on this through the child is not truthful.

So we've got an impasse and one that the Court can't resolve as to whether there was sexual abuse or not or whether the mother made something up.

So in light of those circumstances, I certainly think the child, who has exposure to both parents, needs a protective order for her protection. And the child needs to have a therapist to address the issue of the mother's belief and the father's belief in this matter in treating the child in interacting with both parents and going forward with her life.

Following entry of the trial court's dispositional order on April 18, 2007, which incorporated its ruling from the bench by reference, father and mother noted these appeals.

II. ANALYSIS

A.

MOTION TO DISMISS DSS'S PETITION AND
VACATE THE PROTECTIVE ORDER

Father contends the trial court erred in refusing to dismiss the protective order entered by the J&DR court based on the fact that the administrative finding that he sexually abused his daughter was reversed on administrative appeal. Because DSS, the original petitioning party, was no longer able to advocate for a protective order limiting father's contact with daughter based on that reversal, father contends the trial court had no basis for denying his motion to dismiss the protective order. We disagree.

Although DSS initiated the original petition seeking a protective order pursuant to Code § 16.1-253, that code section permits the issuance of such an order "[u]pon the motion of any person or upon the court's own motion" in order "to protect a child's life, health, safety or normal development pending the final determination of any matter before the court." This

- 9 -

statute makes clear that parties other than DSS, including a court *sua sponte*, may initiate proceedings for and advocate entry of a protective order.

After father appealed to the circuit court the last of several J&DR dispositional orders sought by DSS, an administrative hearing officer reversed the separate administrative finding of sexual abuse concerning the facts on which DSS had originally sought the protective orders, concluding the evidence admitted *in the administrative proceeding* did not prove father sexually abused daughter. As a result of that finding, DSS admitted it had no factual basis permitting *it* to request the continuation of an order protecting the child from her father. Nevertheless, DSS chose not to non-suit or withdraw its petition, and it specifically asked the trial court to take the action the court determined to be in the best interests of the child. The J&DR court made findings separate from those made by DSS and the administrative hearing officer in the related but separate proceedings, and father concedes on brief that "the ultimate decision by Virginia DSS" was not binding upon the courts "in any formally preclusive sense." Cf. Simmons v. Commonwealth, 252 Va. 118, 120-21, 475 S.E.2d 806, 807 (1996) (in the context of an administrative driver's license suspension, distinguishing between "an administrative act" and "a judgment by a court of competent jurisdiction"). In addition, the trial court, by granting mother's motion to file a cross-claim in the *de novo* appeal, permitted mother to take on the role of advocating for a protective order incorporating a finding that the best interests of the child dictated restricting father to supervised visitation, and mother presented evidence in support of her position.

On these facts, we hold the trial court did not err in refusing father's motion to dismiss the protective order.

B.

EXCLUSION OF EVIDENCE CONCERNING ADMINISTRATIVE REVERSAL
OF DSS'S FOUNDED CHILD SEXUAL ABUSE DISPOSITION

Father also challenges the trial court's exclusion of written evidence documenting the

determination by the Virginia Department of Social Services that the evidence admitted in DSS's

separate administrative proceeding was insufficient to support a finding that father had abused

his daughter. That evidence included both (1) the written opinion of the administrative hearing

officer reversing on appeal and (2) a letter from DSS's counsel in response to a request for

clarification of DSS's position in the pending *de novo* appeal of the protective order to the circuit

court. As set out above, father does not argue that the administrative decision or letter was

binding on the courts "in any formally preclusive sense." Thus, he does not contend the

documents were admissible as proof of the administrative decision for *res judicata* purposes.

Instead, he contends the documents were merely relevant in the protective order proceeding[2] and

were admissions of a party opponent, rendering them admissible as an exception to the hearsay

rule.[3] We hold the trial court's exclusion of the challenged evidence did not constitute reversible

error.

Evidence constituting an admission of a party opponent may be admissible as an

exception to the hearsay rule, although such statements "may be inadmissible for a variety of

other reasons." Alatishe v. Commonwealth, 12 Va. App. 376, 378, 404 S.E.2d 81, 82 (1991). "It

is well settled . . . that the exclusion of evidence favorable to a party in a civil action on the

---

[2] The trial court had earlier been made aware of DSS's Level 1 administrative finding that father sexually abused the child and the reversal of that finding. In the *de novo* appeal before the trial court, neither DSS nor mother contended that the *fact* of reversal of the administrative finding was inadmissible as irrelevant. Thus, we do not consider whether evidence of the administrative finding or the fact that it was reversed would have been admissible over a relevance objection.

[3] We assume without deciding these documents were admissions of a party opponent.

- 11 -

ground that it is repetitious and cumulative is a matter within the sound discretion of the trial court . . . ." Harrison v. Commonwealth, 244 Va. 576, 585, 423 S.E.2d 160, 165 (1992).

The letter written by Andrew Herrick, counsel for DSS, merely set out DSS's position regarding the judicial appeal following the administrative reversal. Mr. Herrick also set out DSS's position in person at the circuit court hearing on the *de novo* appeal. To the extent father was entitled to establish the fact of the reversal and DSS's position as petitioner in the appeal before the circuit court as set out in the letter, the trial court held this information had been presented to the court through the statements of Mr. Herrick at the *de novo* hearing. When the trial court asked father's counsel, "Is [Mr. Herrick's letter of January 11, 2007] inconsistent with what Mr. Herrick said?" father's attorney replied merely, "I'm trying to make a record," and made no allegation that the letter contained anything at odds with or in addition to what Mr. Herrick had represented verbally in open court. The trial court ruled, "I've heard what Mr. Herrick said," and stated it would mark the proffered exhibit as refused. Thus, the record supports the conclusion that the trial court was aware of DSS's position as set out in the letter and that the contents of the letter were merely cumulative.

For similar reasons, we hold the exclusion of the administrative hearing officer's written decision was not reversible error. The trial court had already been made aware by the parties of the fact of the administrative reversal of the founded sexual abuse complaint. The trial court was not required to admit the administrative opinion or to consider any of the evidence or rationale for reversal contained therein. Thus, the trial court's refusal to admit the administrative decision was not an abuse of discretion.

C.

CONSTRUCTION OF ADJUDICATORY ORDER AS FINDING
THAT FATHER SEXUALLY ABUSED THE CHILD

Mother, in her related appeal, contends the trial court erred in construing the J&DR

court's adjudicatory order, at least some of the contents of which the parties attempted to

stipulate to in the appeal to the circuit court, as finding only that one unnamed parent had abused

or neglected the child in an unspecified way rather than as finding father had abused the child

sexually. We hold the trial court did not err in the manner in which it construed the order.

A trial court "'speaks through its orders and those orders are presumed to accurately

reflect what transpired.'" McBride v. Commonwealth, 24 Va. App. 30, 35, 480 S.E.2d 126, 128

(1997). When a court's statements from the bench conflict with its written order, the order

controls. Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979).

However, in construing an order of a lower court that does not conflict with the transcript, a

reviewing court may consider the lower court's statements from the bench to determine what

construction a lower court has placed on its own order. Fredericksburg Constr. Co. v. J.W.

Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000).

Here, in the first adversary protective order, issued February 18, 2005, the J&DR court

specifically stated "the abuser of the child is not identifiable at present." In the proceedings that

led to the issuance of that protective order, the J&DR judge stated,

> I think clearly the evidence shows that this child is the subject [of]
> abuse and neglect. I'll say abuse and at this point I really can't
> identify a perpetrator because . . . it's either clearly coming from
> the mother [via coaching leading to a false complaint] or from
> [true acts of abuse by] the father.

The J&DR judge's next order, the adjudicatory order of March 15, 2005, did not contain

the phrase used in the February 18, 2005 order, "the abuser of the child is not identifiable at

present," and merely stated its reliance on the testimony of Dr. Vaughan-Eden and the affidavit

- 13 -

of Lori Green, which alleged the child reported father had sexually abused her. Nevertheless, the court made clear on the record in other ways its holding that "the abuser" remained "[un]identifiable." In conjunction with his entry of the March 15, 2005 order, the J&DR judge endorsed his notes from that proceeding, which were written on a pre-printed record of proceedings and "order" form and were entered in the same fashion as the adjudicatory order. Those detailed notes stated, "*finding remains – no party named.*" (Emphasis added). The manner in which the trial judge completed the March 15, 2005 order was consistent with that statement. He marked the boxes on the pre-printed form indicating that "[t]he child is abused and neglected." In selecting on the form order from among the various pre-printed bases for the finding of abuse and neglect, the J&DR judge *did not* mark the pre-printed line indicating abuse and neglect based upon a finding that the child's "parents or other person responsible for his care commits or allows to be committed any *sexual act* upon a child in violation of the law." (Emphasis added). Instead, he marked the block indicating he made the abuse and neglect finding because the child's "parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions."

The preliminary child protective order the J&DR court entered the same day named *both* parents and ordered *both* "[t]o abstain from offensive conduct against the child" and "[t]o refrain from acts of commission or omission which tend to endanger the child's life, health or normal development." Although both orders stated they were based on the testimony of Dr. Vaughan-Eden and the affidavit of Lori Green, which alleged the child reported father had sexually abused her, and the preliminary protective order required that all contact between father and the child be supervised, the transcript of that proceeding, like the court's official notes,

indicated the court declined "to resolve . . . whether [father] did or did not commit [sexual abuse]."

Finally, at the next hearing on April 22, 2005, when the J&DR court entered the first dispositional order, it expressly stated that the purpose of the supervised visitation requirement was "[f]or the child's protection *and for the father's protection.*" (Emphasis added).

Thus, the J&DR court's written orders and official notes of March 15, 2005, supplemented by its statements from the bench on March 15 and April 22, 2005, supported the trial court's ruling that the adjudicatory order did not include a finding that father sexually abused the child. It made a finding only that the child was abused and neglected.

D.

TRIAL *DE NOVO* AND EXCLUSION OF EVIDENCE CONCERNING
THE IDENTITY OF THE ABUSER AND PRESENT RISK TO THE CHILD

Father contends the trial court erred in refusing to allow a trial *de novo* or even to hear evidence on the issue of whether it was father or mother who abused the child, contending "such clarification was necessary to determine what sort of protective order was appropriate." He also challenges the trial court's exclusion of certain expert opinion testimony that he "did not [presently pose] a risk to his child" and its exclusion of all evidence of "matters before November 1, 2005, including evidence relating to whether it was [father] or [mother] who presented a risk to the child." The trial court ruled it lacked authority to alter the J&DR court's findings of fact as contained in the adjudicatory order.[4] We hold the trial court erred in reaching

---

[4] The trial court did not clearly articulate whether the basis for its ruling was (1) the parties' stipulation to the findings in the adjudicatory order or (2) the trial court's belief, which it set out earlier in ruling on father's proffer of Dr. Warren's expert testimony, that "[father] could have appealed [the adjudicatory] order and had a hearing *de novo*, and he could have presented evidence back at that time." On appeal, the parties agree that, but for their stipulation to the findings in the adjudicatory order, the circuit court would have had authority to conduct a *de novo* appeal of the issues the J&DR court addressed, including the adjudicatory order.

this conclusion and that, in the *de novo* appeal, it was required to accept evidence relevant to determining whether to enter a protective order and, if so, what the terms of that order should be. We hold further that, to the extent the evidence of whether father sexually abused the child was relevant to that determination, the trial court erred in excluding that evidence.

The parties' apparent stipulation to the correctness of the adjudicatory order's findings was not binding to the extent the agreement conflicted with the court's duty to determine what disposition would serve the best interest of the child. Code § 16.1-227 (expressing the intent of the legislature that "the welfare of the child and the family . . . are the paramount concerns of the Commonwealth"); see Code § 16.1-278.2(A) (referring to "protect[ing] the welfare of the child"). As we have held repeatedly, "[w]hen addressing matters concerning a child, . . . the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). To the extent mother, father or the guardian *ad litem* contends the parties' apparent stipulation to the findings contained in the adjudicatory order prevented the trial court, on *de novo* appeal, from acting in the best interests of the child, we hold the trial court could not be bound by that stipulation.

The Supreme Court and this Court have reached similar conclusions in Kelley v. Kelley, 248 Va. 295, 449 S.E.2d 55 (1994), Shoup v. Shoup, 37 Va. App. 240, 556 S.E.2d 783 (2001) (en banc), and Herring v. Herring, 33 Va. App. 281, 532 S.E.2d 923 (2000). In Kelley, the

---

We agree with this interpretation of the relevant statutes and conclude the trial court erred to the extent its ruling was based on a belief that, if father had desired to challenge the adjudicatory order via *de novo* appeal, he was required to have done so at an earlier stage in the proceedings. See Code § 16.1-278.2(D) ("A dispositional order entered pursuant to this section is a final order from which an appeal may be taken in accordance with § 16.1-296."); Code § 16.1-296(A) (providing that "[f]rom any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken within 10 days from the entry of a final judgment, order or conviction" and that "[p]rotective orders issued pursuant to § 16.1-279.1 in cases of family abuse and orders entered pursuant to § 16.1-278.2 are final orders from which an appeal may be taken" but not listing adjudicatory orders entered pursuant to Code § 16.1-253(F)).

- 16 -

Supreme Court held that parents may not enter into an agreement that impinges the statutory right of a court "to change or modify its decree relating to the maintenance and support of minor children." 248 Va. at 298, 449 S.E.2d at 56. Interpreting the meaning of this decision in Shoup, we held that parents "are encouraged under Virginia public policy[] to reach agreements respecting the care and support of their minor children" but that such agreements are subject to several restrictions, including the requirement that the court "review the provisions of the agreement for their consistency with the best interests of the child or children whose welfare the agreement addresses." 37 Va. App. at 248-51, 556 S.E.2d at 787-89.

In Herring, we held that "when determining child support, a court has an affirmative duty to calculate expressly the presumptive amount of child support under the guidelines and, if it deviates from that presumptive amount, to explain adequately the basis for such deviation" because these actions are necessary "to ensure that the award meets . . . 'the best interests of the child.'" 33 Va. App. at 287-88, 532 S.E.2d at 927. Further, due to the importance of these duties to the goal of meeting the best interests of the child, we held that even if a parent fails to comply with the Court's contemporaneous objection rule, the lack of an objection does not prevent us from reviewing on appeal, under Rule 5A:18's ends of justice exception, the lower court's failure to fulfill its duties to calculate the presumptive amount and explain the basis for any deviation. Id. at 287-88, 532 S.E.2d at 926-27.

Although Kelley, Shoup, and Herring dealt with financial support for children, we hold their principles are equally applicable to the stipulation at issue in this case. Thus, we conclude the parties could stipulate to be bound by the adjudicatory order's findings only if, on *de novo* appeal, those findings permitted the trial court to enter an order of disposition that serves the best interests of the child. On the facts of this case, fashioning a disposition that safeguards the best interests of the child includes not only protecting her from abuse and significant conflict between

- 17 -

her parents but also allowing her to develop a strong, healthy relationship with both parents to the extent possible without jeopardizing the child's physical and emotional welfare. We hold the only way for the trial court to accomplish this goal is to conduct a truly *de novo* hearing regarding whether father sexually abused the child in the manner alleged in the February 9, 2005 petition that instituted the present proceedings in the J&DR court. What form of abuse occurred, if any; which parent committed it; and whether that parent poses any sort of present risk to the child are all key to fashioning a disposition that protects the child's best interests. Thus, in ruling on the admissibility of evidence on remand, the trial court may not exclude testimony relevant to a proper risk assessment simply because it relates to events that occurred prior to the J&DR court's entry of the previous dispositional order on November 1, 2005, or because the J&DR court either actually considered it or merely could have considered it in relation to entering the March 15, 2005 adjudicatory order.

Thus, we vacate the trial court's dispositional order entered April 18, 2007, and remand for further proceedings consistent with this opinion. Because we vacate and remand for the taking of additional evidence so that the court may fashion a disposition that protects the best interests of the child, we need not consider at this juncture father's contention that, in the absence of a determination that he abused the child in any way, the trial court's limitation of his visitation to three hours of supervised contact per week was error.

E.

AWARD OF ATTORNEY'S FEES TO MOTHER

Father contends the trial court erred in awarding mother $5,000 in attorney's fees in the absence of what he contends is any evidence and any findings to support the award. Because the trial court entered a protective order limiting father to supervised contact with the child, the award of fees may have been based in part on the conclusion that mother prevailed on appeal.

- 18 -

Because we vacate the court's entry of the protective order and remand for the taking of additional evidence, we vacate the award of fees, as well. The trial court remains free to consider the request for attorneys' fees anew following its resolution of the case on the merits on remand.

## III.

For these reasons, we hold the trial court did not commit reversible error in refusing to admit cumulative evidence concerning the administrative proceeding, did not err in refusing to dismiss the protective order as a result of that proceeding, and did not err in construing the J&DR court's adjudicatory order as finding abuse by one of the child's parents without specifying which parent committed the abuse or what type of abuse occurred. Nevertheless, we conclude that, despite the parties' apparent stipulation to the J&DR court's nonspecific finding of abuse, the trial court was required to hear evidence and make findings on the issue of which parent or parents committed the abuse and what type of abuse was involved in order to allow it to enter a protective order containing terms designed to meet the best interests of the child while taking into consideration the rights of her parents, as well. Thus, we vacate the trial court's order of April 18, 2007, including the award of attorney's fees, and remand for further proceedings consistent with this opinion. On remand, the protective order shall remain in effect until those additional proceedings have been completed.

<u>Vacated and remanded.</u>

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk