# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Humphreys and Russell
Argued at Leesburg, Virginia


JESSICA NICOLE BALDWIN

MEMORANDUM OPINION[*] BY
v.        Record No. 0310-19-4          JUDGE ROBERT J. HUMPHREYS
                                        DECEMBER 10, 2019
JOHN DENTON BALDWIN


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Mark E. Sharp (Culin, Sharp, Autry & Day, P.L.C., on brief), for
appellant.

Robin C. Gulick (Ryan D. Huttar; Gulick, Carson & Thorpe, P.C.,
on brief), for appellee.


On May 18, 2018, appellant Jessica Nicole Baldwin ("mother") and John Denton

Baldwin ("father") divorced. On September 26, 2018, the Fauquier County Juvenile and

Domestic Relations District Court ("J&DR court") issued mother a protective order against

father. The protective order was to remain in effect through September 25, 2020. The order

covered mother, B.R.B. ("daughter"), and B.D.B. ("son"). Father appealed to the Circuit Court

of Fauquier County ("circuit court"). The circuit court entered an order denying mother's

petition for a protective order and vacating the September 26, 2018 protective order entered by

the J&DR court. Mother appeals from that judgment.

On appeal, mother assigns the following four errors:

> I. The trial court abused its discretion when it included the
> Divorce Documents in the record of this case.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II. The trial court abused its discretion when it considered Father's Plea in Bar that had been filed approximately eighteen hours before trial.

III. The trial court erred when it granted Father's Plea in Bar, in part, such that the court would not consider any evidence of Father's actions prior to the parties' execution of the Addendum in determining whether to grant a protective order.

IV. The trial court abused its discretion when it ruled that Father's actions after the parties' execution of the Addendum did not support the entry of a protective order.

## I. BACKGROUND

On April 10, 2018, mother entered into an addendum to a property settlement agreement. Under the addendum, father has unsupervised visitation with the children.

On October 5, 2018, after father's appeal to the circuit court, mother filed a bill of particulars in the circuit court. In response, father filed grounds of defense and asked that mother's protective order be dismissed. The circuit court scheduled a hearing for January 23, 2019. The day before the hearing, on January 22, 2019, father filed a plea in bar in which he argued that allegations of family abuse before September 14, 2016, were barred by the two-year statute of limitations in Code § 8.01-248. He also argued that allegations of abuse before April 10, 2018, were contractually barred by the final order of divorce, the property settlement agreement, and the April 10, 2018 addendum to the property settlement agreement.

At a hearing on January 23, 2019, father argued in favor of his plea in bar. In response, mother argued that the plea in bar was filed too late and that a petition for a protective order is not an "action" as defined by Code § 8.01-248, the statute of limitations section referenced by father. The circuit court ruled that it would not hear evidence from 2010, 2012, or 2014 because the petition for a protective order and accompanying affidavit failed to mention such evidence. The circuit court ruled,

> I'm going to grant the plea in bar, but if after I hear the evidence that indeed was addressed in the affidavit which is part of the petition . . . for the protective order . . . after the Court has heard all of the evidence if the Court finds it necessary to hear further evidence which might go back to some occurrence before that April 10, 2018, date I will so advise the counsel, and we will go back if I feel it necessary.

The circuit court stated that the appeal is limited to what was brought up in the petition for a protective order and accompanying affidavit.

During opening statement, mother argued that she wanted father to have supervised visitation with the children, rather than a protective order that completely barred contact with the children. After father's opening statement, mother testified. Mother admitted an email chain exhibit in which mother testified that she felt threatened by father because father stated, "Okay. Remember stay out of my life. Last warning." Mother testified that on February 28, 2017, father smacked daughter across the face. As a result, mother kicked father out of the house. Mother testified that because father wanted to stay with mother and she would not allow him to, he broke her car mirror. This incident occurred in March of 2017. Not long after father hit daughter, any time mother discussed father's problems with drugs and alcohol, he became "extremely angry."

Mother testified that in June of 2017, father pinned her down on the floor and strangled her. Father objected to the admission of this testimony because it occurred prior to April 10, 2018. In response, the circuit court reminded mother of its ruling on father's plea in bar and asked mother whether she knew of these events when she entered into the property settlement agreement. Mother responded that she did. However, the circuit court then allowed mother to testify that in August of 2017, son was injured while in father's care. Mother also testified that father endangered the children by getting into a car accident while the children were in his vehicle on November 10, 2017. She claimed that father used drugs the day before the accident,

- 3 -

while the children were visiting for the weekend. Mother admitted that on December 19, 2017, she texted father to ask whether he still loved her and voiced concerns that father was dating another woman.

The circuit court also allowed testimony from February of 2018. Mother testified about a recorded phone call between herself and father. The circuit court clarified its ruling on the plea in bar, stating, "I think that ruling said the Court will decide it could hear evidence to the [sic] anything before that the Court felt may be relevant. February to April I think's close enough, the Court's going to hear it. We're not going back two or three years however." Mother played two recordings of the phone call for the circuit court. In the recordings, father threatened to break down mother's garage door in order to retrieve a safe and his other belongings. The remainder of the phone conversation consisted of arguments about property, discussions of the progress of the divorce, and father's profanity. The call was offered to show how father treated mother. Mother admitted that the conflict about property settled peacefully and that father never broke the garage door.

Mother also testified to a variety of events in March and April of 2018. In March of 2018, mother was driving with the children in the car. Father followed mother's car and tried to swerve mother's car off the road. Mother testified that father threatened her at a counseling session in March of 2018. In April of 2018, mother testified that during a visit with father, daughter drove a four-wheeler and was injured when it fell on top of her. Mother testified that later this same month, son had a cigarette burn on his arm after coming home from a visit with father.

Mother testified that in June of 2018, father threatened her in front of the children, saying, "You know what's coming to you." She also testified that he threatened to "beat the shit

out of" her at that time. Mother alleged that father told daughter, "[D]on't believe your mom. She's a fucking liar."

Next, father testified that mother hit him with her car after hockey practice one day. Father testified that during his time with the children, the family engaged in outdoor activities, including riding four-wheelers and exploring around ponds. Father testified that mother hacked into his email account multiple times. Father e-mailed mother telling her to stop accessing his personal information. He testified that his message to mother to "stay out of [his] life, last warning" was because of mother's invasion of his privacy. In response to mother's testimony that father broke her car mirror in March of 2017, father testified that he and mother were arguing. Mother then removed her shoe and broke father's car mirror. In response, father broke mother's mirror off. Mother apologized the next day, and both parties agreed to buy each other a new mirror. The children were not present during the incident.

Father testified that his interaction with the children has been "great" and that he loves the children a lot. In response to questions about his language in the recorded phone call with mother, father testified that he planned to change his behavior by respecting mother and "not talk[ing] to her like that again." Father responded to mother's testimony that he smacked daughter, stating that it was in discipline because daughter was disrespectful and repeatedly said "shut up." Father testified that mother also physically disciplined the children.

In closing argument, mother asked the circuit court to order supervised visitation because of father's dangerous behavior. Father argued that there was no violence or threat of violence warranting the issuance of a protective order and asked that regular visitation with the children begin. In its ruling, the circuit court stated that it must decide whether the relevant issue was a visitation issue or a protective order issue. The circuit court reasoned that all events besides father threatening to "beat the 's' out of" mother and "don't believe your mom, she's a f'ing liar"

happened before the April 10, 2018 addendum to the property settlement agreement. The circuit court stated, "Now, if you were that concerned about the safety and welfare of the children it is beyond my imagination of why you would go ahead and say, yes, Judge, go ahead and enter that order and the property settlement agreement and the addendum." The circuit court said that this fact showed that mother was not in fear from events preceding the addendum. The circuit court also related that supervised visitation was not the issue; the issue was whether a protective order was warranted. The circuit court noted that modifications to visitation cannot be accomplished through a protective order. The circuit court also noted that mother had not said she was in fear of father, and the parties are bound by what they agreed to in the addendum.

On January 23, 2019, the circuit court entered an order denying mother's petition for a protective order and vacating the September 26, 2018 protective order entered by the J&DR court. This appeal followed. After mother appealed to this Court, father moved to make the following part of the record on appeal: (1) a September 5, 2018 transcript, (2) the separation and property settlement agreement, (3) the April 10, 2018 addendum to the separation and property settlement agreement, and (4) the final order of divorce. This Court remanded this case to the circuit court to determine whether these documents were part of the record in the circuit court.

On June 3, 2019, the circuit court held a hearing on the matter. Mother argued that the documents were not part of the record under Rule 5A:7 because the records were merely referenced, not put into evidence or proffered. The circuit court ruled that the September 5, 2018 transcript was not part of the record. However, the circuit court ruled that it considered the following documents and directed that they be given to this Court: (1) the separation and property settlement agreement, (2) the April 10, 2018 addendum to the agreement, and (3) the final divorce decree.

## II.  ANALYSIS

### A.  Standard of Review

On appeal, this Court views the evidence in the light most favorable to father, the party who prevailed below.  See Surles v. Mayer, 48 Va. App. 146, 156 (2006).  Generally, whether to take judicial notice or to admit evidence is within the discretion of the circuit court.  See Barnes v. Barnes, 64 Va. App. 22, 30-31 (2014); see also Wood v. Commonwealth, 57 Va. App. 286, 304 (2010).  Evidentiary rulings are reviewed for abuse of discretion.  See Lawlor v. Commonwealth, 285 Va. 187, 212-13 (2013).  An abuse of discretion occurs when the circuit court "makes an error of law. . . .  The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."  Porter v. Commonwealth, 276 Va. 203, 260 (2008) (alteration in original) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).  To the extent this Court must address an issue of the interpretation of the rules of the Virginia Supreme Court, such review is *de novo*.  See Granado v. Commonwealth, 292 Va. 402, 407 (2016).

### B.  Including Divorce Documents in Record

We do not reach the merits of this assignment of error because it is procedurally defaulted by lack of a timely objection.  Regarding this assignment of error, mother argues that the circuit court erred in determining on remand that the divorce documents were part of the record because the documents were never introduced into evidence at trial.  As a preliminary matter, it can fairly be inferred that the circuit court took judicial notice of the divorce documents at trial.  See Williams v. Commonwealth, 289 Va. 326, 333 (2015) (recognizing that a circuit court need not use the exact words "judicial notice").  It is clear from the record that the circuit court knew the substance of the divorce documents and referenced the documents multiple times.

Virginia Rule of Evidence 2:201 allows a party to be heard "upon timely motion" as to whether taking judicial notice is proper. Va. R. Evid. 2:201(c). Further, an issue is only preserved for appellate review if "an objection was stated with reasonable certainty at the time of the ruling." Rule 5A:18. Here, mother only objected to father's motion to include the additional documents in the record when this Court remanded the case for clarification of the record. Objecting for the first time on remand when the circuit court merely clarified what it relied on in its initial ruling is an untimely objection. Mother should have objected at the original hearing when the documents were first considered by the circuit court in ruling on father's plea in bar. Further, during cross-examination without objection, mother admitted to entering into the April 10, 2018 addendum and admitted that the addendum provides for father to have unsupervised visitation with the children. For these reasons, the issue is procedurally defaulted.

## C. Plea in Bar Filed Late

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." Hawthorne v. VanMarter, 279 Va. 566, 577 (2010). A plea in bar functions "to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular *cause of action*." Id. at 578 (emphasis added). A plea in bar "constitutes in itself a complete defense to the bill, or to that part of the bill to which it is pleaded." Campbell v. Johnson, 203 Va. 43, 47 (1961). The moving party must prove the issue of fact barring the plaintiff's recovery. See Tomlin v. McKenzie, 251 Va. 478, 480 (1996).

In Virginia, pleas in bar have been used in a variety of civil proceedings, such as property cases, tort cases, malpractice cases, workers' compensation cases, and contract cases. See Code §§ 25.1-211, 25.1-214 (condemnation proceedings); Smith v. McLaughlin, 289 Va. 241, 251-52 (2015) (malpractice); Kohn v. Marquis, 288 Va. 142, 144, 149 (2014) (workers' compensation); Lee v. City of Norfolk, 281 Va. 423, 437-38 (2011) (inverse condemnation); Hawthorne, 279 Va.

at 571, 577-79 (negligence action); <u>Schmidt v. Household Finance Corp., II</u>, 276 Va. 108, 112 (2008) (contract action); <u>Glascock v. Laserna</u>, 247 Va. 108, 110-12 (1994) (wrongful birth); <u>Goodstein v. Allen</u>, 222 Va. 1, 4-5 (1981) (contract action).

However, a plea in bar is not a proper pleading with respect to a petition for a protective order.[1]  First, a protective order, although civil in nature, is distinguished from other types of civil proceedings.  <u>See</u> <u>Crawford v. Commonwealth</u>, 55 Va. App. 457, 480 (2009) (describing preliminary protective orders as "a proceeding that is purely civil in nature").  Unlike most civil proceedings, which aim to make an aggrieved plaintiff whole, a protective order has no basis in common law pleadings and is solely a creature of statute, the aim of which is to "protect the health and safety of the petitioner" and his or her family.  Code § 16.1-279.1(A); <u>cf.</u> <u>Lewis v. City of Alexandria</u>, 287 Va. 474, 482-85 (2014) (finding that the circuit court properly found that Lewis "was made whole" by an award of back pay in a wrongful termination lawsuit).  Consequently, unlike typical civil proceedings, penalties for violation of a protective order range from contempt of court to criminal penalties.  <u>See</u> Code §§ 16.1-253.2, 16.1-279.1(D).

Second, the procedure for procuring a protective order differs from the typical civil action.  According to the Rules of the Supreme Court of Virginia, "A civil action shall be commenced by filing a complaint in the clerk's office.  *When a statute . . . requires*, a proceeding may be commenced by a pleading styled 'Petition.'  Upon filing of the pleading, the action is then instituted . . . ."  Rule 3:2(a) (emphasis added).  For purposes of the rule, a "civil action" is

_____

[1] Although in its recitation of the facts this Court recognized that a special plea in bar was filed in a protective order case, <u>Altice v. Roanoke Cty. Dep't of Soc. Servs.</u>, 45 Va. App. 400, 403 (2005), we did not address the propriety of filing such a pleading in a petition for a protective order.  In that case, Altice only assigned error relating to the substance, rather than the form, of his plea in bar below.  <u>Id.</u> at 402.  In fact, his assignment of error did not refer to a "plea in bar" at all; it merely presented the substance of his argument.  <u>Id.</u>  Consequently, this Court found that Altice failed to provide this Court with the proper documents to address his assignment of error relating to the circuit court's denial of his special plea in bar.  <u>Id.</u> at 404-05.

the only form of civil case and may "arise under legal or equitable causes of action." Rule 3:1. In protective order proceedings, the statute abrogates the requirement of filing a complaint set forth in Rule 3:2(a). Title 16.1 of the Virginia Code, which applies to protective orders under Code § 16.1-279.1 and Code § 16.1-253.1, sets forth that "[a]ll matters alleged to be within the jurisdiction of the court shall be commenced by the filing of a petition" according to the form and content of Code § 16.1-262. Code § 16.1-260(A). Therefore, while a typical civil action is commenced by the filing of a bill of complaint, a protective order is commenced by petition. See generally Code § 8.01-2(10) (clarifying that a "motion for judgment," "bill," "bill of complaint," and "bill in equity" are all synonymous with a complaint in a civil action). The caselaw of the Commonwealth establishes that a plea in bar is a bar to the plaintiff's *complaint*, not a petition. See Campbell, 203 Va. at 47 ("The fact put in issue by the plea constitutes in itself a complete defense to the bill [of complaint], or to that part of the bill to which it is pleaded."). Thus, because a plea in bar responds to a complaint, and a petition for a protective order is not a complaint, a plea in bar does not apply to a petition for a protective order.

Third, a petition for a protective order is not a "cause of action" as contemplated by our caselaw. See generally Hawthorne, 279 Va. at 578.

> In a common-law setting, a cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action. A right of action belongs to some definite person; it is the remedial right accorded that person to enforce a cause of action. It arises only when that person's rights are infringed.

Roller v. Basic Constr. Co., 238 Va. 321, 327 (1989). In contrast, a court may issue a protective order "to protect the health and safety of the petitioner *and family or household members of the petitioner*." Code § 16.1-279.1(A) (emphasis added). Consequently, a protective order may be sought on behalf of third parties; it is not a personal right. Therefore, it is not a cause of action.

- 10 -

Because mother's assignment of error only addresses the timing of the plea in bar, we hold that a plea in bar is not a proper pleading at all in this type of proceeding and need not further consider this assignment of error.

### D. Granting in Part Father's Plea in Bar

As stated above, a plea in bar is not appropriate in a hearing on a petition for a protective order. On the substance of the arguments set forth within father's plea in bar as relevant to the merits of the circuit court's ultimate decision, we find that the circuit court erred in granting father's plea in bar.

Moreover, the circuit court's rulings with respect to the plea in bar in this case are ambiguous. Initially, the circuit court stated, "I am going to grant the plea in bar, but . . . if the court finds it necessary to hear further evidence which might go back to some occurrence before that April 10, 2018, date I will so advise the counsel, and we will go back if I feel it necessary." Later the circuit court indicated that it would not consider evidence outside of the dates alleged in the petition for a protective order. Finally, although the circuit court stated that it was granting the plea in bar, which sought to keep out evidence before April 10, 2018, inconsistent with this ruling and without notifying the parties that it was modifying its earlier order, the circuit court proceeded to admit evidence which related to events occurring before April 10, 2018.

In his motion for a plea in bar, father argued that allegations of abuse before April 10, 2018, were contractually barred by the final order of divorce, the property settlement agreement, and the April 10, 2018 addendum to the property settlement agreement.[2] Title 16.1 of the Code of Virginia explains,

---

[2] Father also argued before the circuit court that allegations of family abuse before September 14, 2016, were barred by the two-year statute of limitations in Code § 8.01-248. Mother responded to father's argument in the circuit court, stating that a petition for a protective order is not an "action" for purposes of Code § 8.01-248. However, because mother does not raise this issue on appeal, her argument is waived.

- 11 -

It is the intention of this law that in all proceedings the welfare of the child and the family, the safety of the community and the protection of the rights of victims are the paramount concerns of the Commonwealth and to the end that these purposes may be attained, the judge shall possess all necessary and incidental powers and authority, whether legal or equitable in their nature.

Code § 16.1-227. Further, this Court has held that an agreement between the parties does not override the "court's duty to determine what disposition would serve the best interests of the child." See Anonymous B v. Anonymous C, 51 Va. App. 657, 675 (2008) (citing Code § 16.1-227) (finding that the circuit court was not bound by the parties' stipulation to factual findings in the J&DR court's adjudicatory order, to the extent that it would prevent the circuit court from acting in the child's best interest).

Thus, any agreement between mother and father could only affect whether mother personally waived any recourse for actions occurring prior to the date of the agreement and cannot, as a matter of public policy, have any effect on the rights of the children to the issuance of a protective order. In other words, regardless of the agreement between mother and father in the divorce proceedings, mother could not contractually waive the rights of her children for certain necessities, including their protection. See, e.g., Kelley v. Kelley, 248 Va. 295, 298 (1994) ("[P]arents cannot contract away their children's rights to support nor can a court be precluded by agreement from exercising its power to decree child support."). The outcome of a settlement agreement does not limit the evidence to be heard during a hearing on a petition for protective order with respect to parties not part of the agreement.

Because we cannot resolve the ambiguity contained in this record between the circuit court's various rulings, its consideration of the settlement agreement, and its actions in admitting evidence, we remand this case to the circuit court solely for reconsideration of the evidence in light of our judgment here. For the reasons that follow, we expressly do not hold here that the circuit court necessarily erred in denying the petition for a protective order.

- 12 -

## E. Issuance of a Protective Order

"In cases of family abuse . . . the court may issue a protective order to protect the health and safety of the petitioner and family or household members of the petitioner." Code § 16.1-279.1. "Family abuse" is "any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury and that is committed by a person against such person's family or household member." Code § 16.1-228. "Family or household member" includes "the person's former spouse" and children. Id. A court may issue a protective order if it has found by a preponderance of the evidence that the petitioner has proven family abuse. See Code § 16.1-253.1(D). "The trial court rather than the appellate court 'ascertains a witness' credibility, determines the weight to be given to [the witness'] testimony, and has the discretion to accept or reject any of the witness' testimony.'" Brown v. Brown, 30 Va. App. 532, 539 (1999) (quoting Street v. Street, 25 Va. App. 380, 388 (1997) (*en banc*)).

Because it appears that the circuit court erred in granting father's plea in bar based on a contractual waiver, we do not determine whether the circuit court abused its discretion in failing to issue a protective order. Instead, we remand for further proceedings consistent with this opinion. For these reasons, the judgment of the circuit court is reversed and remanded.

Reversed and remanded.