COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Powell
Argued at Richmond, Virginia


ANONYMOUS C

MEMORANDUM OPINION[*] BY
v.      Record No. 2232-09-2      JUDGE CLEO E. POWELL
JANUARY 11, 2011

ANONYMOUS B


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Gregory F. Jacob (Winston & Strawn LLP, on briefs), for
appellant.

Thomas M. Wolf (LeClairRyan, A Professional Corporation, on
brief), for appellee.

C. James Summers (Summers & Anderson, on brief), Guardian *ad
litem* for the infant child.


Anonymous C ("mother") and Anonymous B ("father"), the parents of a minor child,

Anonymous A ("the child"), appeal the rulings of the Albemarle County Circuit Court related to its

decision to dissolve and dismiss the preliminary protective order implemented following a finding

by the Albemarle County Juvenile and Domestic Relations District Court ("J&DR court") that the

child had been abused and neglected.  This Court previously remanded this case to the trial court "to

hear evidence and make findings on the issue of which parent or parents committed the abuse and

what type of abuse was involved in order to allow it to enter a protective order containing terms

designed to meet the best interests of the child while taking into consideration the rights of her

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

parents, as well." <u>Anonymous B v. Anonymous C</u>, 51 Va. App. 657, 678, 660 S.E.2d 307, 317 (2008).

On appeal, mother contends that the trial court erred in (1) denying her motion for nonsuit; (2) excluding the child's disclosures of sexual abuse; (3) refusing to allow one of her experts to testify about a medical test; (4) allowing one of father's witnesses to testify on issues beyond the scope of her expertise; (5) admitting the substance of prior administrative proceedings into evidence; (6) limiting her expert testimony as cumulative; (7) refusing to allow her to introduce out-of-court statements for the purpose of showing that her actions were reasonable; (8) refusing to allow her to introduce numerous exhibits into evidence as a sanction for discovery violations; (9) overruling her objections to father's argumentative opening statement; and (10) failing to conduct a "relative financial ability" analysis before requiring her to pay fees to the guardian *ad litem*. Father cross-appeals, arguing the trial court erred by holding that the evidence was insufficient to find mother abused the child and by excluding evidence of mother's coaching of the child. Finding that the trial court erred in several respects, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

ANALYSIS[1]

I.  Mother's Motion to Nonsuit

Mother argues that the trial court erred in denying her motion to nonsuit, as she had an absolute right to a first nonsuit under Code § 8.01-380. Mother contends that the trial court had no choice but to grant her motion to nonsuit because the case had not been submitted to the trial court for consideration, no previous motion for nonsuit had been filed, no motion to strike had been sustained, and no adverse party had filed a counterclaim.

---

[1] As the parties are familiar with the record below, we cite only those facts necessary to the disposition of the appeal.

Father argues that mother had no standing to unilaterally nonsuit the case, as she was subject to the preliminary protective order at issue in this case. In the alternative, father contends that any error on the part of the trial court was harmless, as the trial court had inherent jurisdiction to dispose of the protective order. Meanwhile, the guardian *ad litem* argues that whenever a petition alleging abuse has been filed, the plain language of Code § 16.1-253(F) requires the trial court to conduct a hearing to determine whether the allegations set forth in the petition have been proven. The guardian *ad litem* contends that Code § 8.01-380 is inapplicable to actions filed under Code § 16.1-253. As we hold that allowing a party subject to a preliminary protective order to nonsuit the case would subvert the purposes of Code § 16.1-253, we affirm the decision of the trial court.

The unique posture of this case is important in understanding this Court's ultimate determination on the nonsuit issue. On February 9, 2005, Albemarle County Department of Social Services ("ACDSS") filed a petition pursuant to Code § 16.1-253 alleging father had sexually abused the child. After hearing evidence on the matter, the J&DR court concluded the child had been abused but that it was unable to identify the perpetrator of the abuse.[2] As a result, the J&DR court entered a preliminary protective order naming both parents as persons subject to the order.

On March 15, 2005, the J&DR court held an adjudicatory hearing and again found that the child was abused and named both parents as subject to the preliminary protective order. On April 29, 2005, following a dispositional hearing, the J&DR court issued a protective order naming both parents. The J&DR court issued two more protective orders on November 1, 2005, and May 3, 2006, each naming both parents as subject to the order.

---

[2] The J&DR court found that either father sexually abused the child or mother emotionally abused the child by coaching her to make a false report about father.

Following the issuance of the May 3, 2006 protective order, father noted a *de novo* appeal of the dispositional hearing.[3] While his appeal was pending, ACDSS reversed its administrative finding that father had sexually abused the child. As a result, father moved the trial court to dissolve the protective order. In response, mother filed a cross-claim against father, noting that "[t]he administrative reversal does affect [ACDSS]'s ability to act effectively as Plaintiff in this civil action." In her cross-claim, mother requested the trial court construe the March 15, 2005 adjudicatory order to provide that father sexually abused the child and enter such orders as necessary to protect the child from additional abuse, or, in the alternative, find that father abused the child and enter such orders as necessary to protect the child from additional abuse. In his answer to mother's cross-claim, father moved the trial court to find that mother abused the child and to enter such orders as necessary to protect the child from additional abuse.

At trial, the court ruled that it was bound by the J&DR court's findings of fact as contained in the J&DR court's adjudicatory order and proceeded to hold a dispositional hearing based on the J&DR court's adjudicatory findings. In the subsequent appeal to this Court, we held the trial court erred in making this ruling and remanded the case to the trial court with instructions that the trial court hold a *de novo* adjudicatory hearing. Anonymous B, 51 Va. App. at 677, 660 S.E.2d at 316.

As a result, the case before the trial court was father's *de novo* appeal of the J&DR court's adjudicatory finding that the child had been abused by either mother or father, both of whom were subject to the resulting protective order. ACDSS was the petitioner, and, as mother and father were each subject to the resulting protective order, they were both respondents.

Father subsequently moved to dismiss ACDSS from the case and strike its petition. ACDSS offered no objection to father's motion, as long as the trial court found the ruling to be in the best

---

[3] This Court subsequently determined that an appeal of the dispositional hearing necessarily includes an appeal of the corresponding adjudicatory hearing. Anonymous B, 51 Va. App. at 674-75, 660 S.E.2d at 315.

interests of the child. On March 3, 2009, the trial court granted father's motion, dismissing ACDSS as a party and dismissing its petition. At the same time, the trial court also determined that mother's cross-claim covered the allegations made in ACDSS's petition and that the same remedies necessary to protect the child from additional abuse were still available to the court. As a result, the trial court effectively substituted mother for ACDSS as the advocate of the protective order. It is important to note, however, that nothing in the trial court's order indicated that mother was no longer subject to the protective order. Indeed, in its order dismissing ACDSS, the trial court specifically stated "[t]hat the Child Protective Order previously entered by this Court *shall remain in full force and effect* pending the full hearing scheduled for this matter." (Emphasis added). As a result, mother was now in the position of advocating a protective order to which she was also subject as a potential abuser.

Against this backdrop, we examine Code § 8.01-380(A), which provides in relevant part:

> A party shall not be allowed to suffer a nonsuit as to any cause of action or claim or any other party to the proceeding, unless he does so before a motion to strike the evidence has been sustained or before the jury retires from the bar or before the action has been submitted to the court for decision.

The plain language of the statute establishes that a nonsuit may be taken only as to a cause of action, claim, or other party. Our Supreme Court has defined a "cause of action" as "a set of operative facts which, under the substantive law, may give rise to a right of action." Roller v. Basic Constr. Co., 238 Va. 321, 328, 384 S.E.2d 323, 326 (1989). "A right of action belongs to some definite person; it is the remedial right accorded that person to enforce a cause of action. It arises only when *that person's* rights are infringed." Id. (emphasis added). A claim, on the other hand, is defined as "[t]he aggregate of operative facts giving rise to a right enforceable by a court." Black's Law Dictionary 281 (9th ed. 2009); see also Stamie E. Lyttle Co. v. County of Hanover, 231 Va. 21, 26 n.4, 341 S.E.2d 174, 178 n.4 (1986) (defining a "claim" as "'an authoritative or challenging

request,' 'a demand of a right or supposed right,' or 'a calling on another for something due or supposed to be due'" (quoting Webster's Third New International Dictionary 414 (1981))).

Based upon these definitions, most actions brought under Code § 16.1-253 are neither causes of action nor claims. The statute clearly states that a preliminary protective order may be issued "[u]pon the motion of any person or upon the court's own motion . . . if necessary to protect a child's life, health, safety or normal development." Thus, under most circumstances, an action under Code § 16.1-253 does not involve the infringement of a right personal to the movant; rather, it involves the protection of a third party: the child.[4] Indeed, the fact that the court has authority to seek a preliminary protective order *sua sponte* indicates that no personal right of the movant is involved.[5]

Recognizing that a number of actions are neither causes of action nor claims, the General Assembly included in Code § 8.01-380 a third basis to nonsuit an action: taking a nonsuit as to "any other party to the proceeding." We note, however, that in the present case, *both* father and mother are technically respondents. Thus, mother's decision to nonsuit the action as to the only "other party," i.e., father, would have no bearing on her position as a respondent. As the trial court would still be in a position to consider all of the evidence presented to determine whether any abuse

---

[4] We recognize that, on rare occasions, the child may seek a protective order on his/her own behalf. In such situations, the action under Code § 16.1-253 would obviously involve a right personal to the movant, and therefore a right of action would exist.

[5] Mother's argument relies heavily on the fact that a nonsuit may be taken in other cases where the child is the subject of the litigation, such as in custody actions. Her reliance, which at first blush appears to have merit, is misplaced. Custody actions are readily distinguishable from the present case, as a custody action is based on the movant's rights as a parent; such a claim is personal to the parent, not the child. Actions brought under Code § 16.1-253, on the other hand, are based on protecting the child from abuse; such actions are not personal to the movant, but are undertaken on behalf of the child. Indeed, it is clear that the movant need not have any personal stake in the outcome of an action brought under Code § 16.1-253.

occurred and, if so, who committed it, mother's nonsuit as to the other party would have no practical effect on the outcome of the proceeding.

Furthermore, it is well settled that the ability to take a nonsuit is "distinctly a weapon in the arsenal of a plaintiff." Trout v. Commonwealth Transp. Comm'r, 241 Va. 69, 73, 400 S.E.2d 172, 174 (1991). However, in the present case, it would be improper to label mother as the "plaintiff" because the parties to an action under Code § 16.1-253 are not in the same positions as plaintiffs and defendants in a traditional action. Code § 16.1-253(F) states that, "[i]f a petition alleging abuse or neglect of a child has been filed . . . the court shall determine whether the allegations of abuse or neglect have been proven by a preponderance of the evidence." Notably, the statute is silent as to *who* must prove the allegations of neglect and abuse. While at first it appears logical that the movant or petitioner would be the one required to prove the allegations of neglect and abuse, such is not always the case. There are situations in which the movant or petitioner is not in a position to properly advocate for the preliminary protective order, such as where the trial court has moved for the preliminary protective order or where, as in this case, the petitioner is subject to the preliminary protective order. Similarly, there are situations in which the advocate of a preliminary protective order may no longer wish to pursue the matter, such as where the evidence indicates that the advocate may actually be the abuser.

In its final order, the trial court correctly recognized that "while the petition is brought in the name of the mother, it is for the benefit of the child. Therefore, the right to advocate a protective order on behalf of the child can be transferred to a party of interest." This observation is consistent with the stated intention of the Virginia Juvenile Code, Code §§ 16.1-226 to -334, that "in all proceedings the welfare of the child and the family . . . and the protection of the rights of victims are the paramount concerns of the Commonwealth." Code § 16.1-227. Indeed, we have previously recognized that

the court's paramount concern is always the best interests of the child. *This standard applies especially in a case of alleged child sexual abuse . . . and in such cases the court may subordinate the legal rights of the parents to the welfare of the child.*

Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990) (emphasis added); see also

Forbes v. Haney, 204 Va. 712, 716, 133 S.E.2d 533, 536 (1963) ("[T]he welfare of the child is to

be regarded more highly than the technical legal rights of the parent. Where the interest of the

child demands it, the rights of the father and mother may be disregarded.").

Similarly, Code § 16.1-253 is intended to provide for the protection of abused and neglected

children, and it would be highly illogical to allow a person who may, in fact, be responsible for the

abuse and neglect to be in a position to nonsuit the action against herself. Accordingly, in cases

such as this, where allegations of child sexual abuse have been presented to the trial court and a

preliminary protective order has been issued pursuant to those allegations, it is axiomatic that an

alleged abuser's "right" to nonsuit must be subordinate to the welfare of the child.

Here, because mother was a respondent to the preliminary protective order, her right to

nonsuit the case against her was necessarily subordinate to the welfare of the child. Therefore, for

all the foregoing reasons, we hold that the trial court did not err in denying mother's request for a

nonsuit, because the evidence supports a finding that it was in the best interests of the child for the

trial court to transfer the right to advocate for the protective order to father and the guardian *ad

litem*.[6]

---

[6] In its final order, the trial court specifically transferred the right to advocate for the protective order to father and the guardian *ad litem*, stating

> Whereas counsel for the father objected, and the guardian *ad litem* for the child objected, the court finds that they are permitted to continue the advocacy of this petition on behalf of the child and further finds that it is in the best interest of the child to do so . . . .

<u>II. Exclusion of the Child's Disclosures of Sexual Abuse</u>

Mother next argues that the trial court erred in excluding the child's disclosures of sexual abuse. According to mother, the trial court erred by: (1) excluding the child's disclosures of sexual abuse that had been allowed into evidence in previous hearings; (2) excluding all of the child's disclosures of sexual abuse without making specific findings related to each disclosure; (3) misapplying the trustworthiness and reliability factors enumerated in Code § 63.2-1522(D) in excluding the child's disclosures of sexual abuse to Dr. Viola Vaughan-Eden ("Dr. Vaughan-Eden") and Lori Green ("Green"); (4) refusing to allow the child's disclosures of sexual abuse into evidence to demonstrate the child's state of mind; and (5) finding the child was unavailable to testify. For the reasons set forth below, we agree that the trial court erred in excluding some of the child's disclosures of sexual abuse and remand the matter to the trial court to make the necessary trustworthiness and reliability findings for all of the child's disclosures of sexual abuse.

<u>A. Disclosures of Sexual Abuse Admitted in Prior Proceedings</u>

Mother argues that the trial court erred in excluding the child's disclosures of sexual abuse because the disclosures had previously been allowed into evidence during the adjudicatory hearing held in the J&DR court. Mother contends that the law of the case doctrine required the trial court to allow the disclosures into evidence.

Rule 5A:18[7] provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of

---

[7] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." As the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. <u>See</u> <u>Fails v. Va. State Bar</u>, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

justice." "The purpose of Rule 5A:18 is to provide the trial court with the opportunity to remedy any errors so that an appeal is not necessary." Knight v. Commonwealth, 18 Va. App. 207, 216, 443 S.E.2d 165, 170 (1994).

At no point during the trial did mother argue that the child's disclosures should be admitted on the grounds that they had been admitted during a previous stage of the litigation.[8] Accordingly, Rule 5A:18 bars our consideration of this issue on appeal.

### B. Exclusion of the Child's Disclosures of Sexual Abuse in a Single Ruling

Mother next argues that the trial court erred in excluding the child's disclosures of sexual abuse in "a blanket ruling," as opposed to addressing each disclosure individually. Mother notes that, when the trial court applied the trustworthiness and reliability factors enumerated in Code § 63.2-1522(D), it used facts applicable to a few of the child's disclosures of sexual abuse to discredit all of the child's disclosures of sexual abuse. Mother contends that the language of Code § 63.2-1522 uses the word "statement" in the singular form, indicating "the legislature's intent that each disclosure be analyzed separately." Father does not dispute mother's interpretation of the statute; rather, he argues that the trial court did not err in its application of Code § 63.2-1522, as the record supports the findings of the trial court. Furthermore, father contends that mother mischaracterizes the letter opinion as a "single, blanket ruling" under Code § 63.2-1522. According to father, the letter opinion merely represents the trial court's ruling on his motion *in limine*, which specifically targeted the disclosures of sexual abuse made to Dr. Vaughan-Eden, Green, and Dr. Sheila Furey ("Dr. Furey"). To the extent that the trial court

---

[8] Although mother made an argument based on the law of the case doctrine, the argument was not regarding any disclosures of sexual abuse made by the child. Rather, mother argued that the law of the case doctrine applied to the trial court's previous finding that the child was abused and, therefore, all that needed to be determined was the type of abuse and the identity of the abuser. At no time did she reference the disclosures of sexual abuse made by the child.

excluded the child's disclosures of sexual abuse without making the required findings, we agree

with mother that the trial court erred.

Statutory interpretation presents a pure question of law, which we review *de novo*.

Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003).

> When interpreting statutes, courts "ascertain and give effect to the intention of the legislature." Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003). That intent is usually self-evident from the words used in the statute. Id. Consequently, courts apply the plain language of a statute unless the terms are ambiguous, Tiller v. Commonwealth, 193 Va. 418, 420, 69 S.E.2d 441, 442 (1952), or applying the plain language would lead to an absurd result. Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001).

Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006).

Under Code § 63.2-1522(A), "an out-of-court *statement* made by a child . . . describing

any act of a sexual nature performed with or on the child by another . . . may be admissible in

evidence if the requirements of [Code § 63.2-1522(B)] are met." (Emphasis added). Code

§ 63.2-1522(B) provides that the out-of-court statement may be admitted if the child is

unavailable to testify, Code § 63.2-1522(B)(1), and the "statement is shown to possess

particularized guarantees of trustworthiness and reliability," Code § 63.2-1522(B)(2). In

determining whether the child's statement possesses the necessary particularized guarantees of

trustworthiness and reliability, the trial court must consider the twelve factors listed in Code

§ 63.2-1522(D).[9] Furthermore, the trial court is required to "support with findings on the

---

[9] The twelve factors are as follows:

1. The child's personal knowledge of the event;

2. The age and maturity of the child;

3. Certainty that the statement was made, including the credibility of the person testifying about the statement and any apparent

- 11 -

record . . . any rulings pertaining to . . . the trustworthiness and reliability of the out-of-court statement." Code § 63.2-1522(E).

The consistent use of the term "statement" in the singular form clearly indicates the General Assembly's intent that each disclosure of sexual abuse must be analyzed individually. Furthermore, a majority of the factors the trial court must consider in determining the trustworthiness and reliability of a child's statement are statement specific.[10] Indeed, only three

> motive such person may have to falsify or distort the event including bias, corruption or coercion;
>
> 4. Any apparent motive the child may have to falsify or distort the event, including bias, corruption, or coercion;
>
> 5. The timing of the child's statement;
>
> 6. Whether more than one person heard the statement;
>
> 7. Whether the child was suffering pain or distress when making the statement;
>
> 8. Whether the child's age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;
>
> 9. Whether the statement has internal consistency or coherence, and uses terminology appropriate to the child's age;
>
> 10. Whether the statement is spontaneous or directly responsive to questions;
>
> 11. Whether the statement is responsive to suggestive or leading questions; and
>
> 12. Whether extrinsic evidence exists to show the defendant's opportunity to commit the act complained of in the child's statement.

Code § 63.2-1522(D).

[10] Nine of the twelve factors (2, 3, 5, 6, 7, 8, 9, 10, and 11) relate either to the content of the specific statement made by the child, the context in which that statement was made, or the credibility of the person testifying about the statement.

- 12 -

factors are *not* statement specific.[11]  In its August 6, 2009 letter opinion, the trial court identified

each of the twelve factors of trustworthiness and reliability enumerated in Code § 63.2-1522(D),

and explained how it considered each factor.  Throughout its explanation, the trial court referred

only to the disclosures made to Dr. Vaughan-Eden and Green.  At no point did the trial court

reference disclosures of sexual abuse made by the child to Dr. Furey or anyone else.[12]  Absent

the requisite findings on the record, the trial court's exclusion of all of the child's out-of-court

statements describing sexual abuse was error.[13]

### C.  Exclusion of the Disclosures Made to Dr. Vaughan-Eden and Green

As previously noted, the trial court's August 6, 2009 letter opinion specifically referenced

the disclosures of sexual abuse the child made to Dr. Vaughan-Eden and Green.  As such, unlike

the disclosures of sexual abuse made to Dr. Furey and others, the trial court's rulings on these

statements are supported with findings on the record, as required by Code § 63.2-1522(E).

---

[11] Factors 1 and 4 focus on the basis of the child's knowledge about the event and any potential motive the child may have to lie.  Meanwhile, factor 12 involves evidence independent of the child's statement.

[12] We recognize that a finding that the child lacks the proper basis of knowledge (factor 1) or has a motive to lie (factor 4) could affect all of the disclosures made by a child and therefore serve as a non-statement-specific basis for excluding all of the child's statements. Nevertheless, the trial court would still be required to make a finding that the child's statements lacked the necessary trustworthiness and reliability as a result.  Code § 63.2-1522(E).  Here, the record clearly demonstrates that the trial court was concerned that the child's statements were tainted by the fact that she had "no memory of a time when there has not been a focus on whether she has been sexually abused."  Indeed, the trial court specifically found that such experiences "would have some influence on the statements of the child."  However, rather than finding that the taint was so pervasive as to render all of the child's statements untrustworthy, the trial court determined that it would simply "mak[e] it more difficult to find the particularized guarantees of trustworthiness and reliability."

[13] Mother's question presented was limited specifically to the trial court's exclusion of the child's disclosures of sexual abuse under Code § 63.2-1522.  As such, our holding is limited to only those statements made by the child "describing any act of a sexual nature performed with or on the child by another."  Code § 63.2-1522(A).  The issue of the trial court's exclusion of hearsay statements made by the child that do not relate to sexual abuse is raised in father's cross-appeal and is therefore discussed below.

- 13 -

Mother, however, argues that the trial court misapplied the trustworthiness and reliability factors enumerated in Code § 63.2-1522(D). Specifically, mother contends that the trial court erred in finding that the disclosures were the product of leading questions as opposed to spontaneous statements by the child.

"In determining whether a statement possesses particularized guarantees of trustworthiness and reliability . . . the court shall consider" the twelve enumerated factors and "make findings on the record." Code § 63.2-1522(D), (E). As we have repeatedly recognized in interpreting similar statutes that require the trial court to consider certain enumerated factors, the trial court "'is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). "If the circuit court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal." Fadness v. Fadness, 52 Va. App. 833, 842, 667 S.E.2d 857, 862 (2008). As such, the decision of the trial court will be reversed only when its decision is plainly wrong or without evidence to support it. Code § 8.01-680; see Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992) ("When the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion.").

Upon familiar principles, "we consider the evidence in the light most favorable to the party prevailing in the trial court." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). Mother's specific argument focuses on the trial court's findings regarding factors 6, 10, and 11. With regard to those factors, the trial court made these specific findings in its August 6, 2009 letter opinion:

> [Regarding factor 6], [w]hile more than one person heard the
> statement, the court does not find that it indicates a particularized

- 14 -

> guarantee of trustworthiness or reliability.  The statement was heard by Lori Green and Terry Walls, but the statement was repeated after prompting by Dr. Vaughan-Eden through leading questions such as "who hurt your butt."

> \* \* \* \* \* \* \*

> The court next examines the tenth and eleventh factors. . . . It is difficult for the court to assess these factors because Dr. Vaughan-Eden's sessions with the child were not recorded and her notes do not indicate with any degree of specificity what questions were asked of the child.  The questions that are pointed out in the notes, such as "who hurt your butt," seem to be leading in nature.

Nothing in either of these statements is plainly wrong or lacking evidence to support it. Indeed, Dr. Vaughan-Eden's notes make it clear that the child's statement in front of Green and Terry Walls was prompted by specific questioning on the part of Dr. Vaughan-Eden.

Furthermore, we note, as a general matter, that the trial court found that Dr. Vaughan-Eden violated the protocol of the forensic model she purported to follow and that her evaluation of the child was tainted by mother's inflammatory description of father's alleged actions.  These findings alone would be sufficient to support the trial court's ruling.  Accordingly, we cannot say that the ruling of the trial court is "plainly wrong or without evidence to support it."

### D.  Disclosures as Evidence of the Child's State of Mind

Mother argues that the trial court erred in refusing to allow the disclosures of sexual abuse as evidence of the child's state of mind.  Mother contends that the disclosures of sexual abuse demonstrated that the child had been exposed to some kind of sexualized contact not normal for a child her age or that the child had been exposed to a traumatic experience that caused her to feel pain or to be afraid.  However, as previously noted, we "will not consider an argument on appeal which was not presented to the trial court."  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see also Rule 5A:18.

- 15 -

Mother's brief does not direct us to the place in the record where she preserved this specific issue for appeal, see Rule 5A:20(c) (stating that "[t]he opening brief of appellant shall contain . . . [a] statement of the questions presented with *a clear and exact reference* to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court (emphasis added)), and we have found no evidence in the record indicating that mother informed the trial court of the error she now presents to us. [14] "We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). As it does not appear that this objection was ever presented to the trial court, Rule 5A:18 bars our consideration of this question presented on appeal. [15]

---

[14] In her brief, mother indicates this issue was preserved in two different places in the record. She first cites to an objection she made regarding the redaction of alleged hearsay in plaintiff's exhibit 6. The material redacted from plaintiff's exhibit 6 consisted of statements made by mother to the University of Virginia medical staff relating to the symptoms mother observed in the child prior to bringing the child to the hospital. None of the redacted material involved any disclosures of sexual abuse made by the child.

Mother next cites to her "Objections to Order Excluding Hearsay Statements," where she stated:

> The trial court should address each hearsay statement individually with the parties and counsel, and [mother] should be allowed the opportunity to argue each statement individually and to seek the introduction of each statement on alternative grounds, e.g. state of mind, recent complaint exception, excited utterance, spontaneous response to an event of which the child had first-hand knowledge, and/or Code of Virginia § 8.01-401.1.

On this occasion, mother did not argue that the disclosures should come in under any specific exception to the hearsay rule, such as state of mind. Rather, she sought the opportunity to argue for the admission of each disclosure on an individual basis.

[15] To the extent that mother's objections arguably served to put the trial court on notice of her argument that the disclosures should be admitted based on an exception to the hearsay rule, we note that mother failed to specify which exception is applicable to the child's disclosures of sexual abuse; rather, she merely listed a number of exceptions to the hearsay rule that she would like to argue.

- 16 -

E.  Refusal to Allow the Child to Testify

In her final argument relating to the child's disclosures, mother argues that the trial court erred in refusing to allow her to call the child to testify once the disclosures of sexual abuse had been excluded.  Mother contends her stipulation that the child was unavailable to testify was void *ab initio*, as it lacked the necessary expert opinion testimony required under Code § 63.2-1522(B)(1)(g), and, therefore, she should have been allowed to call the child to testify. We disagree.

A stipulation is "an agreement between counsel respecting business before a court." Burke v. Gale, 193 Va. 130, 137, 67 S.E.2d 917, 920 (1951).

> A stipulation of counsel, particularly when relied upon by a court, cannot later be unilaterally withdrawn.  Trial judges must be able to rely on counsel to make tactical concessions during trial, especially those "designed to narrow the issues and expedite the trial or settlement of litigation," McLaughlin v. Gholson, 210 Va. 498, 500, 171 S.E.2d 816, 817 (1970), without the risk of such reliance being undermined later.

Rahnema v. Rahnema, 47 Va. App. 645, 658, 626 S.E.2d 448, 455 (2006).

---

> "When an objection identifies the rule of evidence on which admission or exclusion depends, the proponent ordinarily need not do more to preserve error than offer the evidence.  But when the objection, hearsay in this case, does not focus on the specific issue presented on review, here the applicability of [a specific] exception, error is not preserved [when the evidence is excluded] unless the proponent [of the evidence] alerts the trial court to that issue.  This is in accord with the general principle that to preserve error in a ruling on evidence a party must notify the trial court of his position and the specific rule of evidence on which [the party] relies."

Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 524-25 (1992) (quoting Huff v. White Motor Corp., 609 F.2d 286, 290 n.2 (7th Cir. 1979)) (substitutions in original).
    Furthermore, mother failed to obtain a ruling on this matter from the trial court, therefore, "there is no ruling for us to review on appeal."  Ohree, 26 Va. App. at 308, 494 S.E.2d at 489.

We have recognized that the efficacy of stipulations is not unlimited.  Indeed, stipulations like the one at issue here "are subject to several restrictions, including the requirement that the court 'review the provisions of the [stipulations] for their consistency with the best interests of the child or children whose welfare the [stipulation] addresses.'"  Anonymous B, 51 Va. App. at 676, 660 S.E.2d at 316 (quoting Shoup v. Shoup, 37 Va. App. 240, 250, 556 S.E.2d 783, 788 (2001)).  However, once a valid stipulation has been agreed to, "there can be no objection to it." Burke, 193 Va. at 137, 67 S.E.2d at 920.

Here, in accepting the stipulation that the child was unavailable, the trial court specifically addressed the issue of whether the stipulation was in the child's best interests, stating:

> [I]t appears to the Court that even if a therapist evaluated the child and said, "no, the child is just fine and could testify," that both parties would still agree that the therapist was wrong.
>
> And in looking at the history of this case and the allegations that have been made, and the evaluations the child has already been through, and the relationship between the parties, the Court finds that based upon those factors, as well as the recognition of the parties, that there is a substantial likelihood the child would suffer severe emotional trauma from testifying at the proceeding or by means of a videotaped deposition or a closed-circuit television. And further finding that the child is already going to be seeing a therapist, and then to add another evaluation on top of having a therapist does not appear would be in the best interests of this child, the Court is going to find . . . that the child is not available, pursuant to 63.2-1522, and not require the expert evaluation at the time.

It is important to note that mother made no objection to the trial court's findings.  As our Supreme Court explained decades ago,

> In Virginia, we have also approved the general rule that a party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory.  A litigant is estopped from taking a position which is inconsistent with one previously assumed, either in the course of litigation for

the same cause of action, or in dealings *in pais*. This wise and
salutary policy has been repeatedly followed.

Burch v. Grace St. Bldg. Corp., 168 Va. 329, 340, 191 S.E. 672, 677 (1937). "Or, as some cases

put it, 'A man shall not be allowed to approbate and reprobate at the same time.'" Leech v.

Beasley, 203 Va. 955, 962, 128 S.E.2d 293, 298 (1962).

Considering that the parties agreed to the stipulation and the trial court found the

stipulation was in the best interests of the child, for all intents and purposes the child was no

longer available to testify. The trial court, therefore, did not err in refusing to allow mother to

call the child to testify.

### III. Qualification of Dr. Benton to Testify About the ABEL Assessment

Mother argues that the trial court erred in refusing to allow Dr. Benton to testify

concerning the reliability of the ABEL Assessment of Sexual Interest ("ABEL Assessment").[16]

According to mother, Dr. Benton was qualified to testify as an expert on the ABEL Assessment

due to his years of experience in evaluating sexually abused children coupled with the fact that

he had read "extensively" about the ABEL Assessment. As such, mother contends the trial court

abused its discretion in not qualifying Dr. Benton as an expert in that area. We disagree.

> In civil cases, expert testimony generally is admissible if it will
> assist the trier of fact in understanding the evidence. However, the
> admission of expert testimony is subject to certain basic
> requirements, including the requirement that the evidence be based
> on an adequate foundation. The decision whether to admit such
> testimony is a matter committed to the trial judge's sound
> discretion, and we will reverse a trial court's determination in this
> regard only when the court has abused its discretion.

John v. Im, 263 Va. 315, 319-20, 559 S.E.2d 694, 696 (2002) (citations omitted).

---

[16] The ABEL Assessment of Sexual Interest purports to identify sexual disorders and
measure deviant sexual interest.

- 19 -

At trial, Dr. Benton admitted that, although he was familiar with the ABEL Assessment, he had never received any training on administering the exam. Indeed, he testified that Dr. Abel, the creator of the ABEL Assessment, had not publicly released all of the parameters of the exam. In light of Dr. Benton's candid admissions, we cannot say that the trial court abused its discretion in refusing to allow Dr. Benton to testify as an expert on a subject which he was, admittedly, not an expert.[17]

### IV. Qualification of Wendy Carroll to Testify About Child Sexual Abuse

Mother also argues that the trial court erred in allowing Wendy Carroll ("Carroll") to offer opinion testimony concerning child sexual abuse. Mother contends that Carroll was not qualified as an expert in child sexual abuse and, therefore, her testimony allowed father to cast doubts on mother's case through unqualified expert testimony. We disagree.

Carroll, a licensed professional counselor and family therapist, provided testimony about the ten months that she evaluated the child as part of a separate custody/visitation case between mother and father. Carroll testified as a fact witness and never qualified as an expert of any sort. Indeed, mother offered into evidence a letter written by Carroll in which Carroll admitted that the accusations of child sexual abuse "involve[d] issues that are beyond [her] scope of expertise and practice." The testimony at issue occurred when counsel for father asked Carroll: "In the ten months that you observed [the child], did you see anything that gave you any concern about [the child] being sexually abused?" Mother objected on the grounds that Carroll had not qualified as an expert in the field of child sexual abuse. The trial court overruled mother's objection, stating that:

> the Court does not put this on the same level as a forensic sexual
> evaluation, but finds that [Carroll] is a licensed therapist and

---

[17] It is of further note that mother failed to establish any prejudice, as, on rebuttal, she called Dr. Stephen Granderson, an expert qualified to testify about the ABEL Assessment and its applicability in cases such as this one.

therefore can observe behavior and have concern without it being classified as part of a forensic sexual evaluation.

The trial court explained further that the question "as asked" was no different from other questions asked of lay witnesses with regard to their observations of the child's behavior.

Under the "opinion rule," "opinion testimony of lay witnesses is incompetent because the jury is in as good a position as a witness to form opinions from the facts." Lafon v. Commonwealth, 17 Va. App. 411, 420, 438 S.E.2d 279, 285 (1993). There are, however, numerous exceptions to the "opinion rule."

> The principal exception to the "opinion rule" is the common sense understanding that the terms "fact" and "opinion" are relative. Some statements are not mere opinions but are impressions drawn from collected, observed facts, and are admitted under the "collective facts rule." Thus, an "opinion" formed by a witness at a given time, may be a "fact" that explains why the witness acted in a particular way. Making this distinction is a question best left to the discretion of the trial judge.

Id. at 420-21, 438 S.E.2d at 285 (citations omitted).

Here, it is clear that Carroll's testimony fell within the collective facts exception to the opinion rule. Carroll did not testify as an expert; she testified as a fact witness. The question, as posed, merely asked Carroll about her observations and her reaction to those observations, and the trial court's comments indicate it did not consider Carroll's response as anything other than fact-based testimony. Accordingly, we affirm the decision of the trial court.

### V. Admission of Prior Administrative Proceedings Into Evidence

Mother argues that the trial court erred in allowing testimony regarding ACDSS's administrative opinion reversing its initial Level 1 finding of child sexual abuse. Specifically, mother contends that this Court had previously upheld the trial court's exclusion of the evidence and therefore the trial court clearly abused its discretion. Mother also argues that the trial court's rationale for allowing the findings into evidence was flawed. The trial court allowed father to

use the administrative hearing to show Green was biased against him, which mother contends was irrelevant to the issues before the trial court.

"There is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case." United States v. Abel, 469 U.S. 45, 56 (1984). "Frequently, evidence that is inadmissible under a general rule of evidence is admissible under an exception to the general rule or under another rule." Satterfield v. Commonwealth, 14 Va. App. 630, 635, 420 S.E.2d 228, 231 (1992).

In the previous trial on this matter, father sought to enter the findings of the administrative hearing as admissions of a party opponent, namely ACDSS. The trial court rejected the evidence on the basis that it was cumulative, as the trial court was already aware of the findings. On that basis, we upheld the trial court's decision to exclude the evidence. Here, the findings of the administrative hearing officer were offered for an entirely separate purpose: to demonstrate Green's bias toward father.

> The bias of a witness, like prejudice and relationship, is not a collateral matter. The bias of a witness is always a relevant subject of inquiry when confined to ascertaining previous relationship, feeling and conduct of the witness . . . . [O]n cross-examination great latitude is allowed and . . . the general rule is that anything tending to show the bias on the part of a witness may be drawn out.

Henson v. Commonwealth, 165 Va. 821, 825-26, 183 S.E. 435, 437 (1936).

Green was one of the primary witnesses against father. In addition to hearing one of the child's disclosures of sexual abuse, Green played a significant role in supervising father's visitation with the child. As a key witness against father, Green's credibility, as well as any bias she may have had toward him, was necessarily at issue. As such, we find no error in the trial court's decision to allow testimony regarding the findings of the administrative hearing officer to ascertain what bias, if any, Green may have had toward father.

Mother next argues that the trial court erred in limiting her use of expert testimony. Mother contends that, because Dr. Vaughan-Eden was an expert witness and a fact witness and the credibility of the disclosures of sexual abuse the child made to Dr. Vaughan-Eden were the central issue of the trial, mother should have been allowed to put on experts who would testify that the disclosures were credible.  Mother specifically notes that this ruling prevented her from calling one of her expert witnesses and severely limited the scope of the testimony of another.

> In the very nature of things there can be no limitation placed on the number of witnesses who are called upon to testify as to facts, but there is a wide discretion vested in the trial court as to the number of opinion witnesses it will hear on a given subject.

Maupin v. Maupin, 158 Va. 663, 673, 164 S.E. 557, 560 (1932).

"Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it.  It is testimony of the same kind and character as that already given." Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985).  "[W]here evidence is merely cumulative its introduction may be limited by the court."  Id.  Furthermore, "the exclusion of evidence favorable to a party in a civil action on the ground that it is repetitious and cumulative is a matter within the sound discretion of the trial court[,] and . . . its ruling is entitled on review to a presumption of correctness."  Harrison v. Commonwealth, 244 Va. 576, 585, 423 S.E.2d 160, 165 (1992).

In the present case, the trial court did not, as mother contends, prevent her from calling one of her expert witnesses or limit the scope of the testimony of other expert witnesses.  Rather, the trial court ruled that mother could not bolster Dr. Vaughan-Eden's testimony *during her case-in-chief*.  Indeed, the trial court specifically noted that "it would be appropriate to have the defense actually present evidence" before allowing mother to bolster Dr. Vaughan-Eden's testimony.  Moreover, the trial court permitted mother, in her case-in-chief, to elicit extensive

- 23 -

testimony from Dr. Benton, ruling that his testimony was not cumulative of Dr. Vaughan-Eden's. Dr. Benton testified that the child's statements were clear and detailed and that the medical records were "consistent with sexual abuse." Dr. Benton also gave detailed testimony about the sexualized behaviors the child allegedly exhibited in front of others and his opinion regarding the significance of those behaviors to the assessment of whether the child had been sexually abused. Finally, the trial court specifically stated that mother could call additional experts as rebuttal witnesses.[18] The fact that mother chose not to call the expert witness in question on rebuttal cannot be found to be error on the part of the trial court.

### VII. Evidence Showing the Reasonableness of Mother's Actions

Mother also argues that the trial court erred in not allowing her to present evidence that demonstrated her actions were reasonable. Specifically, mother contends the trial court misapplied the hearsay rule in a way that prevented her from demonstrating that her actions were reasonable reactions to what other people told her. We agree.

"Hearsay evidence is defined as a spoken or written out-of-court declaration or nonverbal assertion offered in court to prove the truth of the matter asserted therein." Arnold v. Commonwealth, 4 Va. App. 275, 279-80, 356 S.E.2d 847, 850 (1987). "The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." Anderson v. United States, 417 U.S. 211, 220 (1974). Thus, "the basis for excluding hearsay is that it is not subject to the tests which ordinarily exist to ascertain the testimony's truth." Penny v. Commonwealth, 6 Va. App. 494, 498, 370 S.E.2d 314, 317 (1988). However, "[t]he hearsay rule does not operate to exclude evidence of a statement, request, or message offered for the

---

[18] Indeed, as previously noted, on rebuttal mother did call at least one expert witness, Dr. Ganderson.

- 24 -

mere purpose of explaining or throwing light on the conduct of the person to whom it was made." Fuller v. Commonwealth, 201 Va. 724, 729, 113 S.E.2d 667, 670 (1960).

In the present case, mother sought to explain a number of her actions by offering the statement of a third party that prompted her actions. The statements were not offered for the truth of the matter asserted but, rather, as an explanation as to what caused mother to act in the way she did. The trial court refused to allow such statements into evidence, ruling that they were hearsay. In one such instance, the trial court offered the following example to explain its application of the hearsay rule:

> So here is the Court's analysis. If the statement was going to be, and I'm going to use something absurd, that Dr. Davidson told [mother] to start participating in arson, and [mother] terminated [Dr. Davidson's] services, the Court would have to find that it was true, that that's the statement that Dr. Davidson made. So therefore, even though it's being said that it's not offered for the truth of the matter, the Court would have to believe the truth to find that it served as a basis for [mother] terminating [Dr. Davidson's] services.

It is clear that mother was not offering Dr. Davidson's statement for the truth of the matter asserted by Dr. Davidson; rather, she was offering the statement as evidence that Dr. Davidson made a statement that prompted mother's actions, i.e., to explain why mother did what she did. Thus, Dr. Davidson's statement was not hearsay and should have been allowed into evidence.

Furthermore, the trial court's misapplication of the hearsay rule with regard to mother's testimony was not isolated to the statements by Dr. Davidson. As the trial court specifically faulted mother for failing to offer evidence to explain her actions, when in fact the trial court's misapplication of the hearsay rule prevented mother from offering that evidence, we cannot say the error was harmless and therefore must reverse the decision of the trial court.

VIII. Mother's Discovery Violations

Mother further argues that the trial court abused its discretion by not allowing her to introduce into evidence the "exhibits"[19] referenced in the March 2006 letter as a sanction for failing to disclose them in discovery. Mother contends that the exhibits served to demonstrate her state of mind (which was the reason that father introduced the letter in the first place), completed the record, and were in accord with the pretrial order allowing exhibits not listed to be entered as rebuttal evidence.

"Rule 4:12 gives the trial court broad discretion in determining what sanctions, if any, will be imposed upon a litigant who fails to respond timely to discovery." Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990). "Consequently, we accord deference to the decision of the trial court in this case and will reverse that decision only if the court abused its discretion." Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000).

The record demonstrates that, during discovery, father was provided with a copy of the March 2006 letter, but the exhibits that were enclosed with the letter were not included. There is evidence in the record that father had access to some of the referenced exhibits through other discovery. However, the fact remains that father was not provided with the exhibits in the form that they were in when they were attached to the letter. Indeed, the record indicates that at least one of the referenced exhibits was not actually included with the letter when it was originally sent. Father, however, would have no way of knowing this based on what he received in discovery. In providing the letter in an incomplete form, mother failed to comply fully with the

---

[19] Throughout the March 2006 letter, mother refers to twenty "exhibits," labeled "A" thru "T," that allegedly supported her allegations of sexual abuse against father. Although the letter refers to the various exhibits, there is no indication as to the exact form and content of each exhibit.

discovery order in this case. As such, it cannot be said that the trial court abused its discretion in sanctioning mother.

### IX. Father's Argumentative Opening Statement

Mother argues that the trial court erred in allowing father to make argumentative comments during his opening statement. Mother contends that this "stripped [her] of her right as the plaintiff to be the first to present her case and tainted the trial court's view of Mother's evidence from the very outset."

Assuming, *arguendo*, that mother is correct and the trial court allowed father to make argumentative statements during opening argument, such error was harmless. "[I]n a bench trial, the trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992). Mother has presented no evidence demonstrating that the trial court failed to disregard any prejudicial or inadmissible evidence that father allegedly presented during opening argument, thus we must assume that any such evidence was disregarded. Furthermore, even if the trial court erred in allowing father to make argumentative statements during his opening statement, we hold that the error did not "injuriously affect" the mother's interest and is therefore harmless. See Jenkins v. Dep't of Soc. Servs., 12 Va. App. 1178, 1186, 409 S.E.2d 16, 21 (1991) ("[E]rror which does not injuriously affect the interest of the party complaining is not reversible.").

### X. Parties' Relative Financial Abilities

Mother's final argument is that the trial court erred in dividing the guardian *ad litem's* fees equally between the parties without considering the "relative financial abilities of the parties." According to mother, any award of guardian *ad litem* fees must be based on Code

§ 16.1-278.19, which requires the court to assess the relative financial abilities of the parties in awarding attorney's fees. We disagree.

As an initial matter, we note that Code § 16.1-278.19 merely allows the court to shift the burden of attorney's fees and costs from one party to another. Code § 16.1-278.19 states that "[i]n any matter properly before the court, the court *may* award attorneys' fees and costs *on behalf of any party* as the court deems appropriate based on the relative financial ability of the parties." (Emphasis added). The legislature's use of the word "may" indicates that Code § 16.1-278.19 is non-compulsory, as the trial court *may* award attorney's fees and costs. Similarly, the phrase "on behalf of any party" clearly indicates that fees and costs must first be incurred by the party *before* the trial court may make the award. Thus, Code § 16.1-278.19 is clearly designed to give the trial court authority to shift the burden of attorney's fees and costs from one party to another and does not set out a requirement that a guardian *ad litem's* fees must be divided among the parties based on their relative financial abilities.

Code § 16.1-267(A),[20] on the other hand, clearly governs guardian *ad litem* fees. Under Code § 16.1-267(A), the court is required to assess the total costs of the guardian *ad litem's* representation of the child against *both* parents.[21] Notably, however, the statute is silent as to

---

[20] Code § 16.1-267(A) states:

> When the court appoints counsel to represent a child pursuant to subsection A of § 16.1-266 and, after an investigation by the court services unit, finds that the parents are financially able to pay for the attorney and refuse to do so, *the court shall assess costs against the parents for such legal services in the maximum amount of that awarded the attorney by the court under the circumstances of the case*, considering such factors as the ability of the parents to pay and the nature and extent of the counsel's duties in the case.

(Emphasis added).

[21] As mother's argument is based solely on the applicability of Code § 16.1-278.19, we do not examine the trial court's application of Code § 16.1-267(A). See Rule 5A:18.

how the court may apportion those costs between the parents.  We have recognized that the power to apportion the fees and expenses of the guardian *ad litem* is indivisible from the power to appoint the guardian *ad litem*.  Verrocchio v. Verrocchio, 16 Va. App. 314, 322, 429 S.E.2d 482, 487 (1993).  Our Supreme Court has recognized that the trial court may allocate the costs of the guardian *ad litem's* services "based upon the final result."  Infant C. v. Boy Scouts of America, 239 Va. 572, 584, 391 S.E.2d 322, 329 (1990).  As such, "[t]he decision to apportion guardian fees between both parties . . . involves a matter within the [trial court's] discretion."  Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003).  As nothing in our jurisprudence indicates that allocating guardian *ad litem* costs equally amongst the parties is error, we hold that the trial court did not abuse its discretion.

## XI.  Evidence of Abuse and Neglect

In his cross-appeal, father argues that the trial court erred in finding that mother did not abuse the child.  Father contends that, contrary to the trial court's ruling, Code § 63.2-100 does not require proof of actual mental or physical injury; rather, the evidence need only show "an identifiable pattern of harmful behavior by the parent that threatens to inflict injury to the mental functioning of the child."  Jackson v. W., 14 Va. App. 391, 397, 419 S.E.2d 385, 388 (1992).

As previously stated, statutory interpretation presents a pure question of law, which we review *de novo*.  Ainslie, 265 Va. at 352, 577 S.E.2d at 248.  "When the language of a statute is unambiguous, we are bound by the plain meaning of that language."  Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).

In its September 1, 2009 letter opinion, the trial court stated that

> [Code § 63.2-100] requires that the Court find that [mother's] actions *created or inflicted upon the child a physical or mental injury* . . . . While the mother's actions at time[s] were extreme, *I cannot find that she inflicted mental injury*.  The court find[s] there is a legal difference in intentional[ly] interfering with the father's

access and relationship with the daughter and what would be
required to show a mental injury to the child.

(Emphasis added).

An "abused or neglected child" is defined as any child under the age of eighteen,

"[w]hose parents or other person responsible for his care creates or inflicts, *threatens to create or*

*inflict*, or allows to be created or inflicted upon such child a physical or mental injury by other

than accidental means . . . ." Code § 63.2-100 (emphasis added). In interpreting Code

§ 63.2-100, we have held that "the statutory definitions of an abused or neglected child do not

require proof of actual harm or impairment having been experienced by the child." Jenkins, 12

Va. App. at 1183, 409 S.E.2d at 19.

Furthermore,

> [t]he Commonwealth's policy is to protect abused children and to
> prevent further abuse of those children. This policy would be
> meaningless if a child must suffer an actual injury from the
> behavior of his or her parent before receiving the Commonwealth's
> protection.

Jackson, 14 Va. App. at 402, 419 S.E.2d at 391.

It is readily apparent that the trial court interpreted Code § 63.2-100 to require that the

child suffer an actual mental injury. In actuality, all that is required under the statute is the

creation of an environment that threatens to inflict physical or mental injury to the child. See id.

at 397, 419 S.E.2d at 388. Accordingly, we must reverse the judgment of the trial court.

### XII. Exclusion of the Remainder of the Child's Statements

Father next argues that the trial court erred in excluding one specific hearsay statement

made by the child that did not relate to the allegations of sexual abuse. According to father, the

statement was an excited utterance and therefore should have been allowed into evidence as an

exception to the hearsay rule.

In excluding the statement, the trial relied on its previous ruling that the child's statements were unreliable under Code § 63.2-1522. We note, however, that Code § 63.2-1522 applies only to statements made by a child "describing any act of a sexual nature performed with or on the child by another." The child's statement in this instance did not describe an act of a sexual nature; therefore Code § 63.2-1522 was inapplicable. As there was no objection to the admission of the child's statement into evidence, the trial court erred in subsequently excluding the statement based on its application of Code § 63.2-1522.

## CONCLUSION

The trial court erred in (1) failing to support "with findings on the record" its rulings pertaining to the child's disclosures of sexual abuse under Code § 63.2-1522; (2) misapplying the hearsay rule with regard to mother's state of mind; (3) misinterpreting Code § 63.2-100; and (4) excluding the child's hearsay statements not describing an act of a sexual nature under Code § 63.2-1522.

> It would serve no useful purpose for us to examine the evidence bit by bit to determine what was relevant and what was not. Suffice it to say that we are convinced from the record that the most appropriate action is for the trial court to reexamine all the evidence in light of this opinion.

Keel v. Keel, 225 Va. 606, 613, 303 S.E.2d 917, 922 (1983).

Accordingly, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part
and remanded.